UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RICKIE DAY,

          Plaintiff,         Civil Action No. 13-13336
                                 Honorable Gerald R. Rosen
                                 Magistrate Judge David R. Grand

v.

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,

          Defendant.
_____/

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [10, 12]**

Plaintiff Rickie Day ("Day") brings this action pursuant to 42 U.S.C. §405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions [10, 12], which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B).

**I.     RECOMMENDATION**

For the reasons set forth below, the Court finds that substantial evidence supports the Administrative Law Judge's ("ALJ") conclusion that Day is not disabled under the Act. Accordingly, the Court recommends that the Commissioner's Motion for Summary Judgment [12] be GRANTED, Day's Motion for Summary Judgment [10] be DENIED, and that, pursuant to sentence four of 42 U.S.C. §405(g), the ALJ's decision be AFFIRMED.

## II.     REPORT

### A.     Procedural History

On September 28, 2010, Day filed an application for DIB, alleging a disability onset date of August 31, 2008. (Tr. 148-54). This application was denied initially on December 27, 2011. (Tr. 96-99). Day filed a timely request for an administrative hearing, which was held on November 21, 2011, before ALJ Kevin Fallis. (Tr. 24-49). Day, who was represented by attorney Daniel Pollard, testified at the hearing, as did vocational expert ("VE") Jacquelyn Schabacker. (*Id.*). On January 25, 2012, the ALJ issued a written decision finding Day not disabled. (Tr. 25-41). On June 3, 2013, the Appeals Council denied review. (Tr. 1-6). Day filed for judicial review of the final decision on August 5, 2013. [1].

### B.     Framework for Disability Determinations

Under the Act, DIB is available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" as the:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §1382c(a)(3)(A). The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled

2

>regardless of age, education, or work experience.
>
>Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
>Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. §§404.1520, 416.920); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps …. If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

**C. Background**

*1. Plaintiff's Reports and Testimony*

Day reported that the conditions preventing him from working are bi-polar disorder, depression, low back pain and right knee pain. (Tr. 173). He was terminated from his employment as a hi-lo driver for failing a random marijuana screening. (Tr. 56). He testified that his knee problem stems from a broken knee cap as a child, and as a result he has one leg shorter than the other which requires him to compensate with the other leg, causing pain. (Tr. 61-62). He has trouble climbing stairs, kneeling and bending. (Tr. 182; 187). He testified that he takes Vicodin for his knee and back, and that due to side effects his doctor changed his medication to methadone. (Tr. 59-60).

Day also testified that he has trouble getting along with others, and has had several on-the-job altercations with co-workers, resulting in suspension and probation, but not termination. (Tr. 62-63; 182). Once, after a night of drinking, he had a hangover blackout and pulled a gun

on his wife and shot out her car window. (Tr. 64; 76). He also testified to difficulty concentrating and following directions. (Tr. 65-66; 70). Day testified that he can lift 50-60 pounds, sit for about an hour, stand an hour and a half, and walk 30-45 minutes. (Tr. 66-67). He testified that his day consists of showering, eating, going to doctors' appointments and sitting in his recliner either watching television or playing video games. (Tr. 68; 70; 73-74; 183). He testified that reclining is his most comfortable position and that he can remain in that position for six hours. (Tr. 74). He can start and finish chores, including cooking, cleaning, laundry and vacuuming. (Tr. 68-69; 183). He can also shop, drive and manage his own finances. (Tr. 185). If he has his medication, he generally sleeps 12 hours a night without interruption and does not nap during the day. (Tr. 72). Day testified that he attends church, but does not go out due to lack of funds, although he does visit with family. (Tr. 71-73; 186). He testified that he still smokes cigars occasionally, but no longer drinks or smokes marijuana. (Tr. 75).

      2. *Medical Evidence*

The Court has thoroughly reviewed Day's medical record. In lieu of summarizing Day's medical history here, the Court will make references and provide citations to the record as necessary in its discussion of the parties' arguments.

      3. *The ALJ's Findings*

Following the five-step sequential analysis, the ALJ found Day not disabled under the Act. At Step One, the ALJ found that Day has not engaged in substantial gainful activity since August 31, 2008, his alleged onset date. (Tr. 30). At Step Two, the ALJ found that Day has the following severe impairments: polysubstance use, marijuana use and ETOH in remission; depression, anxiety and insomnia. (*Id.*). He found non-severe Day's alleged impairments of low back pain and right knee pain. (Tr. 30-31). At Step Three, the ALJ found that none of Day's

impairments, whether considered alone or in combination, met or medically equaled a listed impairment. (Tr. 33-35).

The ALJ then assessed Day's residual functional capacity ("RFC"), concluding that he is capable of performing

> a full range of work at all exertional levels but with the following nonexertional limitations: limited to occupations which do not require complex written or verbal communication. Work is limited to simple routine and repetitive tasks performed in a work environment free of fast-paced production requirements involving only simple work related decisions and routine work place changes; and only occasional superficial interaction with the public and co-workers.

(Tr. 35).

At Step Four, the ALJ determined that Day is unable to perform his past relevant work. (Tr. 1836). At Step Five, the ALJ concluded, based in part on VE testimony, that Day is capable of performing the jobs of wire worker (2,000 jobs in the lower peninsula of Michigan), bench assembler (6,000 jobs), and laundry worker (500 jobs). (Tr. 37).[1] As a result, the ALJ concluded that Day is not disabled under the Act. (Tr. 38).

### D. Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. §405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact

---

[1] During the hearing, the ALJ posed a second, more limited hypothetical to the VE, which included the additional limitations of the claimant being limited to medium work (lifting 25 pounds frequently, 50 occasionally, sitting for up to six hours and standing and walking for up to six hours in an eight-hour workday), never climbing ladders, ropes or scaffolds, frequently climbing ramps or stairs, frequently kneeling, stooping, crouching or crawling, avoiding excess vibration, all moving machinery and all exposure to unprotected heights. (Tr. 84). The VE testified that such an individual could perform the jobs of cart attendant (1,000 jobs), packager, (10,000 jobs) or bagger (20,000 jobs). (T. 84-85).

unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.") (internal quotations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by

substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted).

### E. Analysis

#### 1. Waiver

It is difficult to discern Day's specific arguments in support of his motion for summary judgment. His motion consists almost entirely of a compilation of quotations of black letter case law, with little accompanying analysis or application of that law to the facts of his case. Day does assert (in a heading in his brief) that the ALJ erred in "failing to properly evaluate the medical records of evidence and, thereby, forming an inaccurate hypothetical that did not accurately portray [his] impairments." [10 at 7]. However, Day does not explain with any particularity whatsoever which medical records the ALJ purportedly "fail[ed] to properly evaluate." (*Id.*). In fact, his brief cites to no medical evidence whatsoever. [*See generally* 10]. Furthermore, though he appears to argue that the ALJ violated the treating physician rule, he does not cite to any treating physician opinion, much less provide a fact-based explanation of how the ALJ purportedly erred in analyzing his treating physician records. (*Id.* at 9). And although his argument heading does not suggest he is taking issue with the ALJ's credibility determination, the entirety of the evidence he cites in support of his argument is his own subjective testimony and reports. (*Id.* at 9-10). The body of his argument makes clear that his conclusion is premised mostly on his claim that the ALJ erred in assessing his credibility. (*Id.*).

Day's brief is very similar to one his counsel filed in another matter, *Burger v. Comm'r of Soc. Sec.*, 2013 WL 2285375 (E.D. Mich. May 23, 2013), which the court found to present no non-waived issue. And, on March 24, 2014, Chief Judge Rosen issued a scathing commentary

7

on Day's counsel's approach to his clients' summary judgment briefs:

> … [T]his reliance on conclusory assertions and absence of developed argument has become the calling card of Plaintiff's counsel in a number of recent Social Security cases, and nearly every Magistrate Judge in this District has expressed this concern with the work product of Plaintiff's counsel. In light of this lamentable record of filing one-size-fits-all briefs and inviting the Judges of this District to formulate arguments and search the record on his clients' behalf, Plaintiff's counsel is strongly cautioned that this Court will carefully examine his submissions in future suits to ensure that they advance properly supported arguments that rest upon (and cite to) the facts of a particular case. Failure to adhere to these standards will result in the imposition of sanctions and possible referral of counsel for disciplinary proceedings.

*Fielder v. Comm'r of Soc. Sec.*, 2014 WL 1207865, at *1, n. 1 (E.D. Mich. Mar. 24, 2014) (internal citations omitted). While Day's opening brief in the instant case was filed prior to issuance of the *Fielder* opinion, and is a somewhat modified version of the brief submitted in that case,[2] the Court notes that it is yet another "one-size-fits-all" brief, containing the very same "conclusory allegations" and "absence of developed argument" that Chief Judge Rosen found wholly insufficient in *Fielder*. Here, then, the Court could find that Day has waived his argument regarding the ALJ's assessment of the medical opinion evidence. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.") (internal quotations omitted). Nonetheless, for the sake of completeness, the Court will consider all of the evidence in light of the arguments raised (albeit vaguely) by Day.

---

[2] Here, Day has condensed the usual three-page diatribe on the treating physician rule down to one paragraph, and has similarly shortened up the swaths of black letter law usually found in these briefs. Nevertheless, Day fails to tie any of the stated evidence (which consists solely of citations to Day's own testimony) to the arguments made, and at certain points the stated evidence even tends to cut against the argument that Day is trying to make (indeed, at one point, Day attempts to support his claim of disability by pointing to his testimony that he is limited from lifting beyond 60 pounds).

## 2. *Credibility*

Day challenges the ALJ's credibility determination, asserting that the conclusion that he was not entirely credible was error, as he alleges that his subjective reports are supported by medical evidence. [10 at 10]. In making this assertion, Day ignores the reasons articulated by the ALJ for discounting his credibility and fails to cite any medical evidence the ALJ actually failed to properly consider. As set forth more fully below, the ALJ reasonably discounted Day's allegations of disabling limitations because they were inconsistent with the objective medical evidence, the opinions of the state agency reviewing psychiatrist and medical doctor, and his admitted daily activities. (Tr. 30-36).

As the Sixth Circuit has held, determinations of credibility related to subjective complaints of pain rest with the ALJ because "the ALJ's opportunity to observe the demeanor of the claimant 'is invaluable, and should not be discarded lightly.'" *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524, 538 (6th Cir. 1981) (quoting *Beavers v. Sec'y of Health, Ed. & Welfare*, 577 F.2d 383, 387 (6th Cir. 1978)). Thus, an ALJ's credibility determination will not be disturbed "absent compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). The ALJ is not simply required to accept the testimony of a claimant if it conflicts with medical reports and other evidence in the record. *See Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 531 (6th Cir. 1997). Rather, when a complaint of pain or other symptom is in issue, after the ALJ finds a medical condition that could reasonably be expected to produce the claimant's alleged symptoms, he must consider "the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians … and any other relevant evidence in the case record" to determine if the claimant's claims regarding the severity of her symptoms are credible. *Soc. Sec.*

*Rul.* 96-7, 1996 WL 374186, at *1 (July 2, 1996); *see also* 20 C.F.R. §404.1529.

Here, the ALJ thoroughly discussed the objective medical evidence. Day complained of depression, bi-polar disorder, anxiety, insomnia, lower back pain and right knee pain. He also admitted to a prior history of marijuana use, alcohol abuse and cigar smoking, although he testified that he only presently smoked cigars. Day began treating with family physician Dr. Kelvin Callaway in June 2008, complaining of right knee pain, among other things. (Tr. 206). A physical exam was unremarkable and Dr. Callaway ordered an x-ray and MRI. (*Id.*). An x-ray of Day's knees was normal bilaterally. (Tr. 211). Despite these negative findings, Day continued to complain of right knee pain, Dr. Callaway diagnosed arthritis despite no notes reflecting any physical examination of the knee, and he appears to have prescribed Vicodin on several occasions. (Tr. 202-206). Furthermore, there was no evidence from any of Day's treating physicians regarding low back pain.

On December 17, 2010, Day underwent a consultative physical examination with Dr. Clifford Buchman. (Tr. 238-45). Day reported that despite having lower back pain, it did not stop him from doing anything. (Tr. 238). A physical exam was unremarkable other than noting "some difficulty bending, stooping and climbing stairs." (Tr. 239). In addition, Dr. Buchanan reviewed the x-rays of Day's knees and ultimately found Day suffered from no restrictions due to either his lower back or right knee pain, finding him capable of sitting, standing or walking 8 hours a day. (Tr. 240). The ALJ gave this opinion "great weight." (Tr. 36). Despite alleging that the ALJ erred in not including several of his claimed limitations in the RFC and the hypothetical question to the VE, Day does not specifically challenge the ALJ's conclusion in this regard, nor does he challenge the ALJ's Step-Two determination that neither Day's right knee nor his lower back pain constituted a severe impairment.

10

With regard to Day's mental conditions, he received medication from Dr. Callaway, including mirtazapine, Xanax, and an attempt at Lexapro, although Day admitted to not taking that medication and asking to be changed back to mirtazapine. (Tr. 202; 204). None of Dr. Callaway's treatment notes indicate any psychological testing or examination conducted at any appointment related to Day's conditions. (Tr. 202-206). After an incident where Day drank, and in a hangover blackout shot out one of his wife's car windows, Dr. Calloway placed him on Xanax for anxiety and noted that Day had admitted to not taking his medication prior to that incident. (Tr. 204). At another point, Day admitted to drinking again, and Dr. Callaway advised him to stop, as it would interfere with his medical conditions. (Tr. 203). By February 2010, Dr. Callaway categorized Day's depression as "stable." (Tr. 202). There are no treatment notes in the file related to any diagnosis of bi-polar disorder, which was one of the complaints Day noted in his initial application for disability. Day does not challenge the ALJ's omission of any discussion of his alleged bipolar disorder.

After the incident with his wife, Day also began seeing a therapist, Elonzo Duncan, a social worker. Duncan's treatment notes are generic and repetitious, and reveal little as to the state of Day's condition or his progress in treatment over the course of the approximately two years Duncan treated him. (Tr. 220-233; 261-268). For example, every treatment record offers a number of boxes that the therapist could check to correspond with the client's presentation that day. Most days, Day presented as cooperative but depressed, helpless, paranoid, anxious, hopeless, irritable, worthless and suffering from grief and panic attacks. (Tr. 221-33; 261-68). The focus of their sessions was usually on "pain, depression, family, insomnia," and sometimes inability to focus or concentrate, "anger," "children," "night mares" and "health." (*Id.*). And the section where therapist Duncan documents his treatment intervention and Day's reaction to it

11

always read "insight and supporting therapy was provided." (*Id.*). Under the section delineated to document progress toward goals, Duncan always only wrote N/A, which the Court interprets as standing for "not applicable." (*Id.*). Despite this wholly lacking documentation of Day's therapy or progress, Duncan issued a medical source statement on November 16, 2011, opining that Day was "extremely limited in all areas of mental ability, as well as suffered from other limitations including "trembling, feeling shaky, easy fatigueability [sic], sitting on the edge of the chair, restlessness, agitative [sic], twitching and muscle aches." (*Id.*). Duncan opined that Day's history of drug and alcohol use did not contribute (or at least not significantly) to the above limitations. (*Id.*). The ALJ, at the hearing, informed counsel he would not be giving any weight to Duncan's opinion, as it conflicted substantially with the medical records in the file, unless Day provided him with additional medical records to support the opinion. (Tr. 48). Day did not forward any other supporting medical records, (Tr. 33), and does not make any specific challenge to the ALJ's conclusion regarding this opinion evidence.

On December 12, 2010, Day underwent a psychological consultative examination with Dr. Matthew Dickson. (Tr. 234-47). Dr. Dickson undertook a comprehensive mental status examination and diagnosed Day with depressive disorder, not otherwise specified, mood disorder, not otherwise specified, and history of alcohol abuse. (Tr. 236). He issued a Global Assessment of Functioning[3] score of 59 and opined that

> Rickie's mental abilities to understand, attend to, remember, and carry out instructions are not impaired. Rickie's abilities to respond appropriately to co-workers and supervision and to adapt to change and stress in the workplace are moderately impaired. Paranoid personality traits are suggested, but I had insufficient evidence to give this diagnosis.

---

[3] GAF examinations measure psychological, social, and occupational functioning on a continuum of mental-health status from 0 to 100, with lower scores indicating more severe mental limitations. *See White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 276 (6th Cir. 2009).

(*Id.*). The ALJ gave this opinion "great weight." (Tr. 36). Day does not challenge this conclusion.

In light of the objective medical evidence, the ALJ's RFC finding adequately accommodated Day's mental impairments, including his depression and anxiety. (Tr. 16). The ALJ concluded that Day must be limited to no complex written or verbal communication, simple routine and repetitive tasks with no fast-paced production requirements, simple work related decisions and routine work place changes, and only occasional superficial interaction with the public and co-workers. (Tr. 35). These limitations correspond directly to those recommended by Dr. Dickson, and Day neither challenges Dr. Dickson's findings, nor the ALJ's conclusion regarding the weight given to Dr. Dickson's opinion. Further, he has not pointed to any evidence supporting a claim that additional limitations are warranted.

In addition, the ALJ noted that Day's allegations of disabling limitations were not consistent with his reported social functioning and daily activities. (Tr. 32-36). For example, the ALJ noted that Day reported cooking meals, performing household chores, driving, shopping, taking public transportation, and handling his own and the family's finances. (Tr. 32; 34). While noting that Day had had prior conflicts with coworkers, he socialized with family members, was able to engage in routine daily activities in public and acted appropriately with the consultative examiner. (*Id.*). Finally, the ALJ noted that while Day may have some limitations in concentration, his results on the mental status examination reflected much less difficulty that he represented. (Tr. 34). The ALJ also noted that Day admitted to refusing to comply with treatment protocols of his doctors, including abstaining from alcohol. (Tr. 36). It was appropriate for the ALJ to consider these facts in assessing Day's credibility. *See* 20 C.F.R. §404.1529(c)(3)(i) (an ALJ may consider a claimant's activities of daily living in evaluating

credibility); *see also Walters*, 127 F.3d at 532 (an ALJ may consider household and social activities in evaluating the claimant's assertion of pain).

In the face of this substantial evidence, Day relies primarily on own his testimony. [10 at 10]. However, even where there is "objective medical evidence of an underlying medical condition …an ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability." *Jones v. Comm'r. of Soc. Sec.*, 336 F.3d 469, 475-76 (6th Cir. 2003). While Day might disagree with the ALJ's credibility assessment, he has not articulated a basis for overturning that finding, particularly in light of the great weight and deference an ALJ's credibility finding is due on review. *See Kirk,* 667 F.2d at 538; *Smith*, 307 F.3d at 379 (ALJ's credibility determination will not be disturbed "absent compelling reason"). Here, where the ALJ gave a reasonable explanation for discounting Day's credibility, and that explanation is supported by substantial evidence, his credibility finding should not be disturbed.

### 3. *Adequacy of the Hypothetical*

Day also asserts in his brief that "for a response to a hypothetical question to constitute substantial evidence, each element of a hypothetical must accurately describe the Claimant." [10 at 8 (quoting *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994)]. Then, however, Day simply states in conclusory fashion that "[b]ecause each element of the [ALJ's] hypothetical does not accurately describe [him] in all significant, relevant respects, the VE's testimony at the hearing should not constitute substantial evidence." (*Id.*). Although Day phrases this as a Step Five finding, the Court concludes that Day is attempting to refute the RFC finding via a purported Step Five error. *See Kirchner v. Colvin*, 2013 WL 5913972, at *11 (E.D. Mich. Nov. 4, 2013) ("Kirchner's Step Five argument is a veiled attack on the ALJ's underlying RFC finding"

because "this is not a scenario where the ALJ's hypothetical failed to match up to the RFC he ultimately imposed.").

In his decision, the ALJ thoroughly reviewed and discussed the record evidence, concluding that Day has the RFC to perform work at all exertional levels that does not involve complex written or verbal communication, fast-paced production requirements, and is limited to simple, routine, repetitive tasks with simple work related decisions and routine work place changes, as well as only occasional superficial interaction with the public and co-workers. (Tr. 35). In reaching this conclusion, the ALJ considered the objective medical evidence, the opinion of the state agency examining psychologist and medical doctor, and Day's daily activities, as detailed above.

Besides alleging physical limitations that the ALJ should have considered, which the Court finds unwarranted by the fact that the ALJ found no evidence that these alleged conditions even existed – a conclusion unchallenged by Day before this Court – Day appears to argue that the ALJ erred in failing to include in his hypothetical a limitation that he should be barred from interaction with anyone at any time, as a result of the incident where he shot a gun at his wife. [10 at 10]. However, Day's argument ignores that this incident occurred when he had been drinking, an event that Dr. Callaway opined affected his medical conditions, and that he had admitted he was not taking his medication regularly at the time of the incident. (Tr. 203-204). The Court finds no error in the hypothetical, which accounts for Day's mental limitations when he is sober, as he testified to being (Tr. 75), and when he is regularly taking his medications, as he testified to doing. (Tr. 60). The ALJ's handling of this issue is further supported by Day's testimony that he did not generally have problems with people in normal social settings. (Tr. 64). Day does not point to any evidence in the record suggesting more restrictive limitations and

no physician of record ever indicated that Day should be restricted from all contact with people. For these reasons, the ALJ was not required to include such a limitation in the hypothetical question he posed to the VE. *See Bartyzel v. Comm'r of Soc. Sec.*, 74 F. App'x 515, 524 (6th Cir. 2003) (an ALJ is only required to pose those hypothetical limitations that he finds credible); *see also Cookman v. Comm'r of Soc. Sec.*, 2013 WL 6631463, at *9 (E.D. Mich. Dec. 17, 2013) (same). As such, Day's argument that the ALJ formed an inaccurate hypothetical lacks merit.

### III. CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that Day's Motion for Summary Judgment **[10]** be **DENIED**, the Commissioner's Motion **[12]** be **GRANTED**, and this case be **AFFIRMED**.

Dated: July 14, 2014  s/David R. Grand
Ann Arbor, Michigan  DAVID R. GRAND
United States Magistrate Judge

### NOTICE TO THE PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir.1991); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir.1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.1987). Pursuant to

16

E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 14, 2014.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager
